IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID ESPINOZA, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:23-CV-751-DII |
| STATE FARM LLOYDS, | | |
| Defendant. | | |

### ORDER

Before the Court is Defendant State Farm Lloyd's ("Defendant") Motion for Summary Judgment. (Dkt. 37). Plaintiff David Espinoza ("Plaintiff") filed a response, (Dkt. 40), and Defendant filed a reply, (Dkt. 42). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion for summary judgment.

### I. BACKGROUND

In his original petition, which is the live complaint in this case, Plaintiff alleges that he purchased a homeowner's insurance policy from Defendant that ran from March 6, 2021, to March 6, 2022. (Pet., Dkt. 1-1, at 5). Policy Number 53 E1 V588 8 (the "Policy") insured Plaintiff's property located at 548 Wiltshire Drive, Hutto, Texas 78634 (the "Property"). (*Id.*; *see also* Pl.'s Homeowners Policy, Dkt. 37-1, at 1). Plaintiff alleges that on May 28, 2021, the Property sustained extensive damage from a severe hail-and-wind storm. (Pet., Dkt. 1-1, at 6).

On April 30, 2022, nearly a year after the alleged date of loss, Plaintiff submitted a claim to Defendant, requesting coverage for damage to the main dwelling roof and exterior gutters and downspouts of the Property resulting from the May 28, 2021 storm (the "Claim"). (Mot., Dkt. 37, at 3; *see also* Claim Activity File Notes, Dkt. 37-1, at 66). Defendant conducted an inspection of the

1

Property on May 4, 2022. (Mot., Dkt. 37, at 3). The inspection was completed by Defendant's claim specialist, Alex Kemp. (Resp., Dkt. 40, at 2).

Kemp did not find any hail damage to the roof shingles or the metal roof appurtenances. (File History, Dkt. 37-1, at 76). Kemp did note that the shingles showed "normal granule loss and deterioration for their age" and that there was "pen tip size spatter" on "some of the metal roof appurtenances." (*Id.*). Kemp also noted a single wind damaged shingle on the left slope of the roof. (*Id.*). Apart from any observations of the roof itself, Kemp also noted "hail damage to the gutter system on the back elevation of the home that showed quite large hail." He stated that "it was clear that these impacts had been present for awhile due to the build up of dirt and soot in them, which means they do not correlate to the [date of loss] of the claim." (*Id.*).

Based on Kemp's inspection, State Farm drafted an estimate as to the one wind damaged shingle on the left slope of the Property's roof for $580.25 at replacement cost value. (Mot., Dkt. 37, at 3). Kemp did not estimate any damages as to the gutter system because he found that they did not occur on the alleged date of loss. (File History, Dkt. 37-1, at 76). This estimate for the roof shingle fell below Plaintiff's deductible of $3,650.00 under the Policy; therefore, Defendant did not issue any payment to Plaintiff. (*Id.*). Defendant sent Plaintiff a letter explaining its claim decision the same day as the inspection. (*Id.*).

On January 21, 2023—about 8 months after Defendant conducted its inspection and issued its claim letter to Plaintiff—Defendant received a letter from Plaintiff's public adjuster, Tyler Mishoulam ("Mishoulam"). Mishoulam, who inspected the Property on or around January 19, 2023, estimated that the storm on May 28, 2021, caused $51,400.76 in damages to the Property. (*Id.*). Defendant states that it reviewed Mishoulam's estimate and photographs and concluded that "many of the alleged damages were not actually damages and/or were not covered damages under the policy." Further, Defendant concluded that the "larger hail impacts observed to the overhead garage

2

door, A/C fins, gutters and downspouts were old damage that did not occur on May 28, 2021." (*Id.* at 3–4).

A few months later, on March 14, 2023, Defendant received a letter from the Chad T. Wilson Law Firm on behalf of Plaintiff asserting that the storm on May 28, 2021 resulted in $62,642.32 of damages to the Property. (*See* Letter, Dkt. 37-1, at 100). Defendant responded that Plaintiff failed to provide any documentation supporting the $62,642.32 damages estimate and explained that it had already determined that the $51,400.76 damages estimate from Mishoulam included items that were outside the scope of the Policy. (Mot., Dkt. 37, at 4). Therefore, Defendant refused to revise the $580.25 estimate based on its own inspection. (*Id.*).

Plaintiff filed suit against Defendant on May 30, 2023, in the 480th Judicial District of Williamson County, Texas. (Pet., Dkt. 1-1, at 4). Defendant filed its answer to Plaintiff's petition on June 23, 2023. (Answer, Dkt. 1-1, at 24). Defendant then removed this case to federal court on July 7, 2023, based on diversity jurisdiction. (Not. Removal, Dkt. 1). In his petition, Plaintiff asserts claims for (1) breach of contract; (2) non-compliance with the Texas Insurance Code: Unfair Settlement Practices, Tex. Ins. Code § 541.060(a); (3) non-compliance with the Texas Insurance Code: the Prompt Payment of Claims, Tex. Ins. Code § 542.060; (4) breach of the duty of good faith and fair dealing; and (5) several violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41–17.63. (Pet., Dkt. 1-1, at 10–13). Plaintiff claims that the storm on May 28, 2021 damaged the Property's roof, vents, flashings, windows, window screens, fascia, gutters, downspouts, and HVAC system. (*Id.* at 6). Plaintiff requests actual damages to the Property in the amount of $62,642.32, as well as additional damages under each of his causes of action. (*Id.* at 14–16).

The Court set this case for trial on October 7, 2024, and the deadline for dispositive motions was July 19, 2024. (Order, Dkt 12). On June 24, 2024, Defendant filed a motion to limit the

3

testimony of Plaintiff's designated expert, Brandon Allen. (Dkt. 27). United States Magistrate Judge Dustin Howell granted in part and denied in part that motion, granting it on the basis that Allen's testimony should be excluded as to how damages relate to definition of covered causes of loss under Plaintiff's insurance policy. (Order, Dkt. 44). On July 19, 2024, Defendant filed the instant motion for summary judgment on all of Plaintiff's claims. (Dkt. 37).

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record

4

and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

In his petition, Plaintiff brings five causes of action: (1) breach of contract; (2) non-compliance with the Texas Insurance Code: Unfair Settlement Practices, Tex. Ins. Code § 541.060(a); (3) non-compliance with the Texas Insurance Code: the Prompt Payment of Claims, Tex. Ins. Code § 542.060; (4) breach of the duty of good faith and fair dealing; and (5) several violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41–17.63. (Pet., Dkt. 1-1, 10–13). The Court will address each cause of action in turn.

### A. Breach of Contract Claim

The Court turns first to Plaintiff's breach of contract claim. In his petition, Plaintiff asserts:

> State Farm is liable to Plaintiff for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing. It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between State Farm and Plaintiff. State Farm's failure and/or refusal to pay adequate coverage as obligated under the Policy, and under the laws of the State of Texas, constitutes a breach of State Farm's insurance contract with Plaintiff.

(Pet., Dkt. 1-1, at 10). Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (citing *Foley v. Daniel*, 346 S.W.3d 687, 690

(Tex. App.—El Paso 2009, no pet.). "[F]or an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy. *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 439 (5th Cir. 2016) (citing *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997)).

As mentioned above, Plaintiff alleges that the storm on May 28, 2021 damaged the Property's roof, vents, flashings, windows, window screens, fascia, gutters, downspouts, and HVAC system. (Pet., Dkt. 1-1, at 6). Defendant, on the other hand, claims that the only covered damage to the Property attributable to that date of loss is one wind damaged shingle on the left slope of the Property's roof. (Mot., Dkt. 37, at 3). In its motion for summary judgment, Defendant argues that Plaintiff cannot prove that his claim falls within the insuring agreement of the Policy. Specifically, Defendant argues that Plaintiff cannot segregate the alleged damage attributed to the May 28, 2021 storm from other damages, as required by the concurrent cause doctrine. (Mot., Dkt. 37, at 6). "Texas recognizes the doctrine of concurrent causes, so that when 'covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s).'" *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010) (quoting *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, pet. denied)). As such, "[f]ailure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Id.* (citing *Wallis*, 2 S.W.3d at 304). The Texas Court of Appeals held in *Wallis* that "[b]ecause an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." 2 S.W.3d at 303.

Defendant's summary judgment evidence indicates that any storm on the alleged date of loss, May 28, 2021, could not have caused all of the alleged damage—if any of it—to the Property.

6

The Property was covered by the Policy for a single year, from March 6, 2021, to March 6, 2022. (Policy, Dkt. 37-1, at 4). Plaintiff's roof was installed in 2008, (*id.*), making it about 13 years old on May 28, 2021. When Defendant conducted its inspection of the Property on May 4, 2022, its agent, Kemp, did not observe any hail damage to the shingles or metal roof appurtenances of the Property's roof. (File History, Dkt. 37-1, at 76). Kemp did note that the shingles showed "normal granule loss and deterioration for their age" and that there was "pen tip size spatter" on "some of the metal roof appurtenances." Kemp also noted a single wind damaged shingle on the left slope of the roof. (*Id.*). Apart from his observations of the roof, Kemp also noted "hail damage to the gutter system on the back elevation of the home that showed quite large hail." He stated that "it was clear that these impacts had been present for awhile due to the build up of dirt and soot in them, which means they do not correlate to the [date of loss] of the claim." (*Id.*).

Similarly, Defendant's expert Eric Moody ("Moody"), who conducted an inspection of the Property on February 22, 2024, found that there was no evidence of bruising from hail on the surface of the roof shingles. (Moody Report, Dkt. 37-1, at 243). He attributed any markings on the shingles to "minor granule loss associated with routine age-related wear and tear." (*Id.*). Relying on available severe weather data from a CoreLogic Hail Verification Report, Moody further concluded that "multiple small hailstorms have occurred at this loss location beginning on May 11, 2017. Any one of these storms may have contributed to the minor granule loss on isolated laminate composition shingles on this roof." (*Id.* at 244). Like Kemp, he noted that there is one laminate composition shingle that was missing a tab. (*Id.* at 243). Moody only found evidence of hail damage to the Property on the aluminum gutter downspouts and the aluminum gutters. (*Id.* at 244). He stated that the "minor hail indentations in the gutters and downspouts are consistent with the history of $\approx$ 0.75 to 1.0 inch diameter hail falling at this location prior to May 28th, 2021." This minor hail damage is cosmetic in nature and will not adversely affect the functionality of the roof

7

gutters and downspouts[.]"[1] (*Id.*). Finally, Moody opined that the "generally accepted size threshold for hail damage to laminate composition shingles is 1.25 inch diameter hail. There is no evidence that hail of this size or greater ever fell at this loss location." (*Id.*).

Jeff Hunt ("Hunt"), the president of Jeff Hunt Construction and one of Defendant's designated experts, reported similar findings after conducting an inspection of the Property on February 27, 2024. (Hunt Report, Dkt. 37-1, at 285). Hunt concluded that the "only positive evidence of hail impact at the subject property consists of pea-sized and smaller spatter marks and dents on the interior of the gutters on the rear elevation." (*Id.* at 292). He further opined that "[n]one of the anomalies noted on the roof shingles resemble hail damage and are likely to be mechanical in nature or simply the result of age-related degranulation[.]" (*Id.*). Hunt stated in his report that he reviewed a CoreLogic Hail Verification Report that showed that "no hail impact was reported on either the original date of loss of May 28, 2021, or the Allen Consulting claimed date of loss of May 30, 2021. It is possible that small hail impact occurred on other dates prior to either of these dates of loss going back to May 2017." (*Id.* at 289). Hunt also opined that based on the CoreLogic Report "the largest diameter hail that has possibly impacted the subject property since March 26, 2014, was 1.00" on April 15, 2021" yet studies have established "the hail damage threshold for normal asphalt composition shingles as 1.00" to 1.25" in diameter." (*Id.* at 290).

Given that Defendant "has made an initial showing that there is no evidence to support" Plaintiff's breach of contract claim, the burden is now on Plaintiff to come forward with "competent summary judgment evidence of the existence of a genuine fact issue." *Matsushita*, 475 U.S. at 587. However, the Court finds that Plaintiff fails to identify any evidence that a jury could use to

---

[1] Once again relying on a CoreLogic Hail Verification Report, Dr. Moody opined that there was no indication of hail falling at the Property on the date of loss that was ≈ 0.75 to 1.0 inch in diameter. "The CoreLogic Hail Verification Report did indicate 3 storms prior to May 2021 with hail ranging from ≈ 0.75 to 1.0 inches in diameter." (Moody Report, Dkt. 37-1, at 242–43, 262).

8

segregate damages from the alleged date of loss—May 28, 2021—from existing damages. Plaintiff has identified May 28, 2021 as his date of loss, (*see, e.g.*, Pet., Dkt. 1-1, at 6), and continues to do so in his response to Defendant's motion for summary judgment, (Resp., Dkt. 40, at 2). Plaintiff states in his objections and answers to Defendant's first set of interrogatories that he observed the alleged damage to the Property "as it was occurring" on May 28, 2021. (Dkt. 37-1, at 109). In his response to Defendant's motion for summary judgment, Plaintiff claims that he "has sufficient evidence showing a significant hailstorm caused damage on the alleged date of loss." (Resp., Dkt. 40, at 7).

Plaintiff points to the report of Brandon Allen, who Plaintiff designated as an expert witness to testify as to the cause of damages to the Property. (Pl.'s First Am. Designation of Expert Witnesses, Dkt. 37-1, at 115). First, Plaintiff argues that Allen found that a "significant hailstorm passed through the Property's immediate area on the alleged date of loss." (Resp., Dkt. 40, at 8). Plaintiff also notes that Allen "confirmed there was storm activity including wind gusts over 30mph on the date of loss from the Austin Airport." (*Id.*). According to Plaintiff, this is "empirical evidence as to the date of loss" that creates a genuine issue of material fact as whether his claim is covered by the Policy. (*Id.* at 10).

However, Allen actually found that there was no storm event on May 28, 2021. (Allen Report, Dkt. 40-4, at 5). Rather, Allen noted that there was a significant hail storm on May 30, 2021, with hail up to .5 inches in diameter. (*Id.*). Plaintiff has never made any effort to amend the alleged date of loss, nor has he even acknowledged this inconsistency in his filings before the Court. Further, Allen indicated in his deposition that one of the weather reports he relied on, the Wunderground report on wind speeds, may have actually been from March 30, 2021, not May 30, 2021. (Allen Dep., Dkt. 37-1, at 224). While an alleged date of loss of May 30, 2021 would potentially be covered by the Policy, Plaintiff has not presented evidence showing that his damages are traceable to the claim he made in May 2021 related to a storm that happened that day. Plaintiff

9

lacks evidence that would assist a jury in allocating damages between those that resulted from covered perils and those that did not.

In the recommendation and conclusions of his report, Allen opines "that a severe hailstorm caused damage to the roof and collateral surfaces of the property. We observed granule loss and hail bruising consistent with hail damage on all four slopes, along with some apparent wind damage." (Allen Report, Dkt. 40-4, at 7). While this statement may raise a fact issue as to whether there is hail damage to the Property, it does not raise any fact issue as to whether the damage occurred during the coverage period of the Policy, let alone the alleged date of loss. Allen's report suggests that hail could have damaged the Property on May 30, 2021, but it does not provide any evidence that it actually did. Allen does not opine on the condition of the roof prior to May 30, 2021, nor does he explain why the alleged damage could have only occurred on May 30, 2021. Indeed, during his deposition, Allen conceded that "it's not easy to date hail, especially . . . as you get the roofs to be older . . . . [w]hen we get a roof that's 10, 15 years old like this one . . . it's very hard to date them." (Allen Dep., Dkt. 37-1, at 227). Allen explained that his purpose was solely to determine if the observed damage was consistent with what the insured is claiming:

> All you can do as an adjuster is determine if it's consistent with what's being claimed. I'm not looking for a reason not to pay for something . . . . So if they're claiming hail damage to the gutters on the date of loss and it's consistent with what their claiming and all the signs point to that that could've been a possibility on that date, I'm not gonna go any further.

(*Id.* at 228).[2] Plaintiff does not indicate in his response to the motion for summary judgment that he plans to present any other evidence that suggests the alleged damage occurred during the coverage period of the Policy. Accordingly, Plaintiff has failed to raise a genuine issue of material fact as to

---

[2] The Court notes that Allen found that the damage was not consistent with Plaintiff's claim as Allen disagreed as to the alleged date of loss.

whether the alleged damage occurred on May 28, 2021 or even during the coverage period of the Policy.

Because Plaintiff has failed to provide any evidence that would allow the trier of fact to segregate covered losses from non-covered losses, the Court concludes that he has failed to raise a genuine issue of material fact on this point. As a result, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

### B. Extra-Contractual Claims

Plaintiff brings extra-contractual claims for violations of the Texas Insurance Code, violations of the DTPA, and breach of the duty of good faith and fair dealing. (Pet., Dkt. 1-1, at 10–13). Defendant contends that if the Court finds that Defendant is entitled to summary judgment on Plaintiff's breach of contract claim, then the Court must also find that Defendant is entitled to summary judgment on all of Plaintiff's statutory and common law bad faith claims. (Mot. Dismiss, Dkt. 37, at 8).

The Court agrees that Defendant is entitled to summary judgment on Plaintiff's extra-contractual claims. These claims fail because such claims generally cannot be maintained when the breach of contract claim they arise out of fails. *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 79 (5th Cir. 2015) (citing *JAW The Pointe, L.L.C. v. Lexington Ins. Co.,* 460 S.W.3d 597, 602 & n.4 (Tex. 2015)). "'Although [the Texas Supreme Court has] left open the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim,' Plaintiff did not put forth evidence of such extreme conduct or of damages suffered independent of those that would have resulted from an alleged wrongful denial of his claim." *Alaniz*, 626 F. App'x at 79 (quoting *JAW,* 460 S.W.3d at 602). In his response to Defendant's motion for summary judgment, Plaintiff argues that even in the event that the Court dismisses Plaintiff's breach of contract claim, his bad faith claims

can survive because Defendant "made misrepresentations on the extent of the damage caused by the hailstorm, the cost of repair and coverage for the storm damage to the Property," "did not make a good faith attempt to effectuate a prompt, fair, and equitable settlement of claims submitted for which liability became reasonably clear," and "conducted an improper investigation of the Property." (Resp., Dkt. 40, at 6–7). Plaintiff contends that he may seek to recover benefits either under a theory of breach of contract or statutory bad faith. (*Id.* at 10 (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018))). The Court is unpersuaded by this argument.

First, *Menchaca* held that "[a]n insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 500 (emphasis in original). Plaintiff has not alleged any injury independent of a right to benefits. *See Alaniz*, 626 F. App'x at 79 (affirming summary judgment for insurer on all claims because no coverage or breach and insured put forth no evidence of "extreme conduct or of damages suffered independent of those that would have resulted from an alleged wrongful denial of his claim"). Second, Plaintiff's assertions concerning Defendant's alleged bad faith are completely conclusory. The only evidence that Plaintiff points to is evidence that Plaintiff and Defendant disagree as to their estimates of Plaintiff's damages on the alleged date of loss. This dispute does not raise a genuine issue as to whether Defendant acted in bad faith. *See Pham v. State Farm Lloyds*, No. 07-17-00366-CV, 2018 WL 5260659, at *5 (Tex. App.—Amarillo Oct. 22, 2018, no pet.) ("Engaging in an inaccurate calculation of a claim may be the starting point for showing unreasonableness, but it alone is not the end point.").

Similarly, Plaintiff's claims pursuant to the DTPA fail since they are predicated on the same standards as his common law bad faith claims and those asserted under the Texas Insurance Code. *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 870 (5th Cir. 2014) (explaining that claims under the DTPA and the Texas Insurance Code fail if the bad faith cause of action fails

12

where they require the same predicate for recovery (quoting *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir.1997))); *Tex. Mut. Ins. Co. v. Morris*, 383 S.W.3d 146, 150 (Tex. 2012). Accordingly, the Court will grant summary judgment to Defendant on Plaintiff's extra-contractual claims for violation of the Texas Insurance Code, violations of the DTPA, and breach of the duty of good faith and fair dealing.

## C. Prompt Payment of Claims Act

Finally, Plaintiff brings a claim against Defendant for violation of the Texas Prompt Payment of Claims Act ("TPPCA"). (Pet., Dkt. 1-1, at 11). The TPPCA, codified in Texas Insurance Code chapter 542, imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims. Tex. Ins. Code § 542.054 ("This subchapter shall be liberally construed to promote the prompt payment of insurance claims."). Though the TPPCA's purpose relates specifically to prompt payment of claims, the TPPCA also contains specific requirements and deadlines for responding to, investigating, and evaluating insurance claims. *See id.* §§ 542.055–.056. Both the payment deadlines and the non-payment deadlines and requirements are enforceable under the TPPCA, and damages can be imposed for any violation. *See id.* §§ 542.058–.060.

Plaintiff claims that Defendant impermissibly delayed its payment to Plaintiff after Defendant had received "all items, statements, and forms reasonably requested and required" and that the delay constitutes a non-prompt payment of the claim. (Pet., Dkt. 1-1, at 11). Given that Defendant determined that Plaintiff was not entitled to a claim payment under the Policy, Defendant's payment was not delayed in violation of the TPPCA. Defendant inspected the Property and estimated to replace one wind damaged shingle on the left slope totaling $580.25 at replacement cost. Because this cost fell below Plaintiff's $3,650.00 policy deductible, no payment was ultimately made. Since no payments were made on this claim, no interest could be owed on the claim.

Moreover, because Plaintiff's contract claim fails for the reasons explained above, there can be no additional payment owed. State Farm is therefore entitled to summary judgment on all claims brought under the TPPCA.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, (Dkt. 37), is **GRANTED**. Defendant is entitled to summary judgment as to all of Plaintiff's claims against it. Accordingly, the final pretrial conference set for September 18, 2024 and trial set for October 7, 2024 are **VACATED**.

The Court will enter final judgment by separate order.

**SIGNED** on September 16, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE